French *v.* Peters.

---

## BEULAH FRENCH *versus* EDWARD D. PETERS.

The statutes of 1821, relating to the mode of relinquishing a right of dower, superseded all former ordinances, Acts and usages, upon that subject.

The statute of 1821, chap. 40, sect. 6, under which a married woman might relinquish her right of dower by "deed under her hand and seal," gave no efficacy to her deed, unless the husband joined in its execution.

Thus, a release of dower by a married woman, executed while that statute was in force, and in which the husband did not join, though indorsed upon his conveyance, and alleged to be in consideration of the sum mentioned in the conveyance as the price paid by the grantee to the husband for the land, constitutes no bar to her claim of dower.

An assignment to a widow, by the Court of Probate, of an entire parcel of land as her dower, instead of one third in each of the parcels of which her husband died seized, has been denominated an "assignment against common right."

When an assignment made against common right has been avoided in a portion of the land assigned, by virtue of a foreclosed mortgage given by the husband, the widow is restored to her original right of dower in such portion.

ON FACTS AGREED.

DOWER, *unde nihil habet,* brought by the widow of Zadoc

French, who, at one period during her coverture with him, owned the land upon which the Penobscot Exchange House stands, and also many other tracts of valuable land in the city of Bangor.    This suit is brought to recover dower in the Exchange House lot.    On January 19, 1829, the husband, in order to raise money for his own use, mortgaged that lot to Eben. French, alleging the consideration to be $12,000.

The demandant did not join with her husband in executing the deed.    But, on the 4th of February, 1829, she executed upon the back of that deed, an instrument under her hand and seal, relinquishing to the mortgagee her right of dower, reciting therein that the relinquishment was done by the consent of her husband as testified by his being a party thereunto. The husband however did not join with her in that instrument.    The consideration of her said relinquishment was stated to be " the within named sum of $12,000."

The mortgagee, on the next day, (5th February, 1829,) assigned the mortgage to this defendant, Peters.

In July, 1831, after her husband's death, she applied to the Probate Court for an assignment of her dower, and thereupon several entire parcels of the land, including the Exchange House and its lot, were assigned to her in dower, instead of one-third in each of the parcels, of which her husband was seized at his death.    To this assignment she and the heirs assented, and she entered into the possession of the parcels so assigned.

In 1842, the mortgage was fully foreclosed, and the demandant was thereupon evicted of the most valuable of the parcels assigned to her in dower.

Zadoc French's administrator sold lands belonging to the estate, having been duly licensed, on giving to the Judge of Probate a bond, (upon which this demandant was a surety,) to account for the avails.    He, however, misappropriated a large amount of the proceeds of the sale.

The grounds taken in defence were : —

1st.  That the demandant's right of dower was barred by the

relinquishment which she had executed and indorsed upon the mortgage deed ; —

2d. That the assignment of dower made by the Probate Court is a bar to this suit ; —

3d. That the mortgage debt due to the tenant, Peters, ought to have been paid from the avails of the land sold by the administrator, upon whose bond the demandant, as a surety, will be liable to repay to the tenant the balance of that debt. And that debt will be made the larger by her recovery in this suit, and to the very amount of such recovery, because it lessens to that extent the value of the property upon which the mortgage was foreclosed. Wherefore, to avoid circuity, the demandant must be estopped to recover in this suit.

*Moody*, for the demandant.

The instrument, executed by the demandant upon the back of the mortgage deed, is no bar to her right of dower. It was the deed of herself alone, unapproved by her husband. It does not recite the mortgage as a consideration. That it was indorsed upon the mortgage has no effect to make it a part of the mortgage, any more than an assignment upon a mortgage becomes a part of the mortgage. It bears a subsequent date, and was made at a subsequent time. It shows upon its face that she did not intend to be bound by it, unless her husband should join in its execution.

But, if she did design and attempt to bar her right of dower by that deed, it was not effectually done. At the common law the sole deed of a *covert feme* is merely void. 7 Mass. 14; 14 Maine, 435.

It becomes important to ascertain what modifications of the common law have been introduced by the legislature. The colonial ordinance of 1641, by implication, provides that a wife might bar her dower by a writing acknowledged before a magistrate. Anc. Charters, page 99. That ordinance was abrogated upon the revocation of the first charter in 1685. The principle, however, was revived by two provincial statutes passed in 1692. Anc. Charters, chap. 213, 229. These statutes were virtually repealed in 1697 by the proviso to the

" Act for registering deeds." Anc. Charters, page 303 ; *Rowe* v. *Hamilton*, 3 Maine, 63 ; *Fowler* v. *Shearer*, 7 Mass. 14. These cases conclusively show that after the passing of the Act in 1697 "for registering deeds," no statute was in force to authorize a *feme covert*, by her deed alone, to bar her right of dower.

In *Fowler* v. *Shearer*, there is a remark of PARSONS, C. J., that a wife's right of dower was sometimes barred by her separate deed, in which the sale by the husband was recited as a consideration.

The remark was uncalled for by any thing in that case. It was mere *dictum*. But the "separate deed" there spoken of did not mean her *sole* deed, but only a *subsequent* deed. And there is nothing to show that, in such subsequent deed, it was unnecessary for the husband to join. This conclusion is equally grammatical, and is in accordance with the spirit of the case and with the context.

The argument of the opinion shows that the deed of a married woman was void at the common law, but that some cases existed by usage where it might operate to bar her dower ; viz. : — Where she joins her husband in conveying her own estate ; — where she joins in his deed of his own estate, for the purpose of relinquishing her dower ; — and where by a deed, distinct and separate from his conveyance, she relinquishes dower. Can it be questioned, that by this last expression, *used in such a connection*, there must also be meant that the husband should join in the deed ? *Shaw* v. *Russ*, 14 Maine, 435. The *dictum* was based upon a supposed usage. But there is not, and there never was, such a usage.

C. J. WESTON, in *Shaw* v. *Russ*, says, "as to a usage to this effect, we are not aware that an instance has been presented to the consideration of the Court there, (in Massachusetts,) and this is the first attempt of the kind, which has come to our knowledge here."

The deed of a *feme covert*, in which the husband does not join, is void. *Andrews* v. *Hooper*, 13 Mass. 476. The *dictum* of PARSONS, C. J. if intended to apply to the deed of

the wife alone, is denied by STORY, J. in *Rowell* v. *M. & B. Manf. Co.* 3 Mason, 347. At any rate, such a deed, in order to be operative, must recite the husband's conveyance as a consideration. Such is not the character of the demandant's deed. It recites a different consideration. But we consider the case of *Shaw* v. *Russ*, decisive.

With regard, then, to the instrument of Feb'y 4, 1829, there is nothing left for the defence, except what argument may be derived from the language, "or where she may have relinquished her right of dower by deed under her hand and seal," found in statute of 1821, chap. 40, sect. 6. But the obvious answer to that argument is, that by the deed, there referred to, is meant a deed *according to law*; in other words, a deed in which the husband joins. I am not aware of any case, in which her sole deed has been upheld under that statute.

The provision is nothing more than a transcript of Massachusetts statute of 1783, chap. 37, and that of 4 & 5, W. and Mary, chap. 16, sect. 5, which STORY, J. construes as not intended to let in any usage or practice, not consonant to the principles of common law, but merely to refer to the "extinguishment of dower in any legal manner whatsoever."

The commissioners, who compiled the R. S., have shown their understanding of the provision by R. S. chap. 95, sect. 9, wherein it is expressly said that a subsequent deed "executed jointly with the husband," is necessary.

This certainly may fairly be regarded as an exposition on the part of the legislature, of their views of the existing law as to releasing dower.

But whatever may be the construction on this part of the clause, it is a perfect answer to say that the instrument of Feb. 4, 1829, if intended for a deed, was but a joint deed, uncompleted and therefore inoperative.

No defence can be drawn from the assignment of dower, made by the probate court. The defendant, by the foreclosure of his mortgage, divested the demandant of all title and claim to the Bangor Exchange House. The dower assigned her in

that property was then taken away by that foreclosure. She has had no dower or equivalent for dower in these premises. The assignment of dower which she accepted was *inter alios*. The defendant was not affected by it. As to him, it was a nullity. *Sheafe* v. *O'Neil*, 9 Mass. 9; *Wilkins* v. *French*, 20 Maine, 111. Neither was it a release or in the nature of a release. And if it were, it could not be pleaded where there is no privity. A release of dower to a stranger, under whom the tenant does not claim, is not pleadable in bar of dower. *Pixley* v. *Bennett*, 11 Mass. 298.

*J. A. Peters*, for the defendant.

The demandant is barred by her release of February 4, 1829. The effect of that instrument is to be found in the Acts of 1821. The chap. 36, $. 2, provides that nothing in the Act should bar a widow of her dower, who did not join with her husband in such sale or mortgage, or otherwise lawfully bar or exclude herself. Chap. 40, sect. 6, provides that the widow shall be entitled to dower in all lands of which her husband was seized during coverture, except where she may by her own consent have been provided for by way of jointure prior to the marriage or where she may have relinquished her right to dower by "deed under her hand and seal."

The legal doctrine upon this point is found in the opinion of Parsons, C. J., in *Fowler* v. *Shearer*, 7 Mass. 14 and 20. That opinion has ever since continued to be the law in Massachusetts. 9 Mass. 143, 149, 161, and 173; 8 Pick. 536. The same has been the law of New Hampshire. *Shepherd* v. *Howard*, 2 N. H. 176 and 507, and cases there cited. In this State, (3 Greenl. 63,) the doctrine of the Massachusetts cases is discussed at length by Mellen, C. J. and approved and adopted. Though the case of *Shaw* v. *Russ*, 14 Maine 432, undertakes to modify, it by no means overrules it. The marginal note does not correctly indicate the point decided. The decision went upon the ground that the subsequent and separate deed of the wife "was not made in consideration of the husband's conveyance," but for a consideration "altogeth-

er independent and distinct, so that it is not sustained by the case of *Fowler* v. *Shearer*."

The case of *Russ* v. *Shaw* proves our position, for, in the release of the demandant, indorsed upon her husband's deed, she declares that it was made " in consideration of the *within named* $12000 paid" to her husband, &c. this being done " in fulfillment of his and my intention to convey a clear title by virtue of the within written deed."

Thus the release was amply expressed to be in consideration of her huband's conveyance ; so that if *Russ* v. *Shaw* in some respects limits *Fowler* v. *Shearer*, it however leaves our defence fully within the folds of both cases.

Judge PARSONS asserts that it had been usual to make such instruments. He knew *then* much better than we can ascertain *now*, what every day practice, what the usage was, *and* what the law was understood to permit ; and he embodied it in 7 Mass. It was acquiesced in as the law of New England. Thousands upon thousands of instruments have undoubtedly been drafted in accordance with the rules laid down in that case. It is too late to disturb it. And although C. J. WESTON undertook to cavil at it a little, he left it unmarred and unimpaired.

Judge STORY too, who loved to magnify the greatness of great men, and then show where he had found they were mistaken, in a case hereafter named, undertook also to limit Parsons' opinion, but at same time said of him " no man was better acquainted with our local law."

Neither was the law of Massachusetts overruled in 3 Mason, 347, cited by demandant's counsel. That case undertook to say that the case of 7 Mass. must be understood as making a *separate* deed of the wife valid to release her dower when her husband does not join with her, only in cases where her conveyance was in consideration of his conveyance, and was for the same consideration. The case went off upon that point, in the same manner as did our own in 14 Maine. So that the opinion of STORY with that limitation or rather construction of PARSONS' opinion, actually confirms our defence.

There is another decision in the case from 3 Mason, which makes our defence at bar a good one. Judge STORY, discussing in that case what Parsons intended by " a separate deed," says, " If it means that it may be done by a separate deed of the wife executed after the deed of her husband, but *on the same day, or as part of the same transaction,* then there is no difficulty in reconciling it with the language of the statute, for the wife may truly be said to join in the sale, when she is a party to it at the time it was made, whether she join in her husband's deed, *or execute a separate deed."*

We say that Mrs. French's release on the back of her husband's deed of mortgage, was a part of *the same transaction.*

The facts agreed state, that Zadoc French made the mortgage to Eben, his son, to raise money upon for himself, *Zadoc.* It was not therefore a mortgage, in the ordinary course of business, but was made in trust to Eben for Zadoc's benefit. Therefore in legal effect, at all events in equity, Eben was nothing more than a conduit of the title for convenience sake. He held the legal title for his *father, as* his father's, until, as his father's agent, he passed it to Peters for money which was procured for and went to Zadoc. 2 Fairf. 1 ; 2 Pick. 508 ; *Warren v. Ireland,* 29 Maine, 62.

Eben took the deed January 19, 1829, and it was recorded on same day, undoubtedly by Zadoc, and on 4th February, A. D. 1829, received the release of his mother, and *on the fifth, next day following,* assigned the mortgage and sold the notes to Peters for his father. Her release is for same consideration expressed in the mortgage deed. She recites the deed, fully admits and acknowledges it, makes hers a part of his deed, couples them, concludes her deed by the words " as witness our hands and seals this day, &c." Eben all the time holding it in his own hands as an uncompleted conveyance, till his mother had signed, before Peters would buy.

There cannot be any question that delivery of that assignment to Peters, was in legal effect the first delivery that was ever made of the mortgage deed. It was handed Eben, to

deliver Peters on 5th February. Till that day it was pre-
cisely the same as if it had remained in *Zadoc's own hands.*

It was never delivered Eben to be the property of Eben.
Eben paid no consideration for it — did not claim it. The
making of the mortgage, and the release of dower'and the as-
signment of the mortgage, were all for one and the same con-
sideration. They were all made for one purpose, were all de-
livered at one time to Peters, who took from Zadoc French,
or from Eben for Zadoc, all the papers, and paid the money.

How else can this be than one transaction? How can it
be said there was any delivery till that to Peters?

The practice of executing a deed by the wife, in order to
bar her claim to dower, at a time many days subsequent to
that on which her husband had executed it, is common and
unobjectionable. *Frost* v. *Deering,* 21 Maine, 156. Our
case is within that decision.

In the case, 3 Mason, Judge STORY seems to think, if the
husband's assent is necessary to the wife's deed, that it may
be *by parol.* His consent must be presumed in this case, be-
cause it was done for his benefit. More than that, the full
consideration was paid him, or Eben for him, after her re-
lease.

"Where on one side of a paper was a deed apparently abso-
lute, dated and duly executed, and on the other side a writing,
in the usual form of a condition to a mortgage, without date,
signature or seal, this condition was a part of the deed."
*Stocking* v. *Fairchild,* 5 Pick. 181.

How much stronger is the argument in this case, that her
release was a part of the deed?

The question of plaintiff's dower in these premises has
been before this Court several times before. *Wilkins* v.
*French,* 20 Maine, 111; *French* v. *Crosby,* 23 Maine, 276;
*French* v. *Pratt,* 27 Maine, 381.

In each of those cases the mortgage deed and the assign-
ment now in question were before the Court, and parts of the
cases; and in each case it was assumed by the counsel on
both sides, and stated in the opinions of the Court, that the

plaintiff, had by her separate release after her husband's deed, released her dower. It was in neither case regarded as a question.

The case 27 Maine, 381, decides this case. The only difference between the cases is, that the premises now in question are a portion of the very dower assigned to the demandant. But on principle this difference is nothing; it is only in feature.

When the widow was endowed against common right and accepted the assignment made in that way, it barred her from obtaining it in any other mode, she abides by whatever rights she can obtain in that way, she cannot be endowed anew. 27 Maine, 381.

The accepting of that assignment was a release of all other right or mode of dower. If she had a common law claim of dower in defendant's property, which she could demand and obtain by an action, she released it by the acceptance of that assignment.

She does not claim any thing that was given her by that assignment now, but something else. By that assignment she was put into the possession, with claim of freehold, of the whole of the premises in question, she now abandons that claim, or has been defeated of it, and claims *one third* of the same in right of dower, which claim, in that mode, she is estopped to make.

It was decided in *French* v. *Pratt,* that when she received the Exchange House property, she received it subject to incumbrances, all incumbrances made by the husband. The cases cited by Court and counsel are full authority to that effect. In this connection I will also cite, as perhaps analogous upon principle, the cases in 13 Wend. 553 ; 5 Metc. 277.

Her right to dower in the various premises of her husband of which he died seized, (and this comes under that head,) was merely an inchoate right, and lies only in action till assignment.

After assignment she is considered as holding immediately from the death of her husband, so that the heir is not con-

sidered as having ever been seized of that part of his ances-
tor's estate, whereof the widow is endowed. Cruise on Real
Property, Title 6, Dower, chap. 111, sect. 24.

Her endowment was against common right. This was
more beneficial to her than to have taken a third in every lot
of which her husband died seized. She accepted that en-
dowment, and it was a freehold, and she took it subject to
all incumbrances. 27 Maine, 381.

If she continues her husband's seizin, she continues it sub-
ject to the incumbrances, and his seizin in this case having
been subject to a mortgage, it must defeat the widow of her
claim till paid, and if, as in this case, it is absolute, her rights
are gone.

Another ground of defence is, that the plaintiff signed the
bond which Eben French gave for selling land and pay-
ing the debts of the estate. Upon that bond she would be
liable to Peters for the misconduct of the administrator. As
his mortgage has become foreclosed, the presumption is, that
it was of more amount than the Exchange House in value.
He could therefore maintain an action against her. She is
then estopped in this suit, so as to avoid circuity of action.

Permit me now to refer the Court to a beautiful arrange-
ment of the facts of the case, and a clear exposition of the
law upon them in the argument of Mr. Cutting, in the case of
*French* v. *Pratt.* It is a handsome structure, upon a strong
basis, and will endure as long as truth can last. It saves
me much labor, and does him much honor. I shall admire to
see the degree of his composure, if in the close of this case
he shall undertake to tear that structure in pieces.

*Cutting*, in reply.

My associate has proved, I think, that the case of *Fowler*
v. *Shearer*, if it ever was law, has ceased to be so.

The pretence that the statutes of 1821 do not require a
deed in which the husband shall join, he has also fully obvi-
ated.

The defendant contends that the release upon the back of
the deed is to be viewed as a part of the same transaction

with the giving of the deed.    But it cannot be so.    The acts
did not occur upon the same day.    A bond of defeasance, in
order to constitute a mortgage must be of the same day with
the deed, and intended at the time to be a part of the same
transaction.

The case of *French* v. *Pratt*, upon which the counsel so
strongly relies, was essentially different from this.    The de-
mandant had been endowed against common right; that is,
she had taken an assignment of certain entire parcels of land
for her dower, instead of one third in each parcel.    In that
case she sued for dower in one of the parcels which *had not*
been assigned to her.    In this case her claim is for dower in
a parcel which *had* been assigned to her, but of which she
was evicted by the foreclosure.

The demandant's suretyship upon the administrator's bond
can operate as no estoppel to this action ; most certainly it
could avail nothing till after judgment.    If sued upon it, she
might defend upon several grounds.    Among other things,
proof that she had been deprived of this dower, by failing to
recover in this suit, would be a defence.

SHEPLEY, C. J. — The tenant derives his title to the prem-
ises by virtue of a conveyance in mortgage made by the hus-
band of the demandant to Ebenezer French on January 19,
1829.    The demandant did not join with her husband in
that conveyance, but by a separate deed written upon the
back of it, and executed by her alone on February 4, 1829,
she relinquished to the mortgagee her right of dower.    She
recites in that deed, that this is " done by the consent of my
said husband, testified by his being a party hereto," but the
deed contains no other language suited to indicate, that her
husband was to be a party to it.    As the consideration is stated
to be " the within named sum of twelve thousand dollars paid
to him, the words first named, may have reference to the
husband's being a party to the within deed.

Whether the deed executed by the demandant operated as

a valid relinquishment of her right of dower, is the question first arising for decision.

It has become part of the history of this branch of the law, that Parsons, C. J. in the case of *Fowler* v. *Shearer*, represented the authority of a wife to bar herself of dower by deed, to have been derived from an ordinance of the province of Massachusetts Bay and from an act of the provincial legislature, and that he states it to have been "sometimes done by her separate deed subsequent to her husband's sale, in which the sale is recited as a consideration, on which she relinquishes her claim to dower." He refers to it also as a usage and as New England common law. What the usage was, as it respects the mode of execution by the wife, there was no means of ascertaining except from the remarks of the chief justice, and those have not been regarded as free from ambiguity.

When the same question came under consideration in the case of *Rowe* v. *Hamilton*, 3 Greenl. 63, the ordinance and usage were not regarded as of practical importance as it respected deeds executed after the passage of the provincial act of 1697, for the court considered, that all previous statutes and provisions were thereby superseded. The act last named could have no effect upon such conveyances made after the passage of the Act of March 10, 1784, directing the mode of transferring real estate: and this act was superseded in this State, by the Acts of Feburary 19, 1821, chap. 40, and of February 20, 1821, chap. 36.

The former Ordinance, Acts, usages, and decisions, can have no further effect than to aid one in arriving at a correct construction of the acts last named.

The construction of the Ordinance, Acts and usages of Massachusetts was considered in the case of *Rowe* v. *Hamilton*, and of *Powell* v. *Monson* and *Brimfield Manf. Co.* 3 Mason, 347, and of *Shaw* v. *Russ*, 14 Maine, 432. In the latter case the Court concluded, that a release executed by the wife alone on January 9, 1817, for a consideration paid to the hus-

band, was unauthorized by the statute then in force, and that it was void.

It having been stated in the case of *Fowler* v. *Shearer* that the sale by the husband should be recited as the consideration for the separate deed of the wife, it has been considered in some of the subsequent cases to have been an essential ingredient to a valid relinquishment of dower by the wife.

Whatever foundation there may have been in the usage referred to for such a position, there will be found none in the language of the Act of 1784, or in any of the preceding or subsequent enactments. Whether an intention ever did exist or could have existed and have been so frequently carried into effect in the execution of such deeds as to become a usage so as to make the validity of a deed depend upon such a recital may well be doubted.

The provisions of the Act of February 20, 1821, in force, when the deed of the demandant was executed, declared that a widow should not thereby be deprived of her dower "who did not join with her husband in such sale or mortgage, or otherwise lawfully bar or exclude herself from such dower or right." The latter clause, as stated in the case of *Powell* v. *Monson* and *Brimfield Man. Co.*, has never been construed to let in any usage or practice not consonant to the principles of the common law. It doubtless had reference to modes recognized by that law as effectual for such a purpose, such as jointures, marriage settlements, and accepted devises. If this be the true construction of that clause the only mode provided by that statute for a relinquishment of dower by the conveyance of a wife, was by her joining with her husband. By the provisions of the other statute, chap. 40, sect. 6, a widow is entitled to dower, except when by her own consent she has been provided for by a jointure "or where she may have relinquished her right of dower by deed, under her hand and seal."

It was not the purpose of that statute to prescribe the kind of deed, which should have that effect, but to declare, that when she executed a deed under her hand and seal, that

would have the effect to relinquish her dower, it should operate as a bar. A deed executed by her with her husband is a deed under her hand and seal. One executed by her alone, the law does not recognize as her deed. The words of the statute, by deed under her hand and seal, are fully satisfied by a reference to the law, to ascertain, what would be her deed; and they do not call for a construction, that would make any instrument signed and sealed by her a valid deed. If a construction should be given to these words, which would confer powers not known to the law, that clause of the statute would be in conflict with the provisions of the statute, chap. 36, § 2; and by the provisions of one statute she could only bar herself of dower by joining with her husband, and by another she could do it alone without the aid or consent, and even against the will of her husband.

It is worthy of notice, that by the Revised Statute, chap. 95, sect. 9, provision is made that a wife may be deprived of her dower by joining with her husband or with his legally authorized guardian in a deed releasing it. In a note appended by the commissioners of revision to that chapter and section as presented by them it is said, " there have been differing opinions on the subject of a married woman's release of her right of dower as to the mode. The better and the received opinion now is, that the law on the subject is correctly stated in this section."

The Legislature enacted the section, to which this note was appended, with some verbal but not substantial alterations, thereby presenting, as it were, a legislative sanction to such a construction.

In the cases of *Wilkins* v. *French* and of *French* v. *Pratt*, the opinions state, that the demandant had relinquished her right of dower in the premises, but it is so stated historically only in a recital of the facts, and not as a matter considered and decided by the Court.

The deed of the demandant must therefore be regarded as inoperative and ineffectual to release her right of dower in the premises.

The next question presented is, whether the assignment of dower made by the Probate Court is a bar to this action.

Although dower may be assigned to a widow in an estate conveyed by her husband during coverture in mortgage, that assignment cannot be valid against the title of the mortgagee, without an extinguishment of his mortgage. When the mortgage is foreclosed, his title commences from its date, and the widow can have dower only in that estate as in one conveyed by the husband, and can receive only one third part of the rents and income; and an assignment by the heirs or by the Probate Court of the whole estate as dower, is avoided by a foreclosure of the mortgage.

It is insisted, that an acceptance of that assignment by the widow is a bar to an action at law to recover her dower, and that it was so decided in the case of *French* v. *Pratt.*

That case and the case of *Jones* v. *Brewer,* decide only, that an assignment of dower against common right and an acceptance of it, deprive a widow of her right to dower in lands, in which dower was not assigned, not in lands in which dower was assigned. Nor are the principles or authorities on which those decisions were based, applicable to a case like the present.

The rule as stated by Lord Coke is, that if the heir endow the widow of certain lands, of which the husband died seized, in satisfaction of all dower, as well in the lands of his feoffees as in his own lands, the several feoffees shall take advantage of it, whether she be deprived of the benefit of such dower or not.

This rule does not affect the relation existing between the widow and the owner of lands, in which dower has been assigned.

If a widow be endowed against common right in several tracts of land, one of which had been conveyed in mortgage, by the foreclosure of which she is deprived of her dower in that tract, the owner of it cannot plead to an action of dower commenced by her, that dower was assigned to her in other lands, in satisfaction of all dower. When thus de-

prived of a part of her dower by the act of the mortgagee or his assignee, no injustice is done to him by considering the assignment of dower so far void as to enable her to recover her dower in the premises, as she might have done, if her dower had been assigned according to common right. His estate is not subjected to any greater burdens on account of dower, than it might have been, had no such assignment been made. While no injustice is done to either by considering the parties after such avoidance of the assignment of dower, as remitted to their original rights, it appears to be the only mode, in which the rights of the widow can be protected.

If a husband should die seized of one tract of land only conveyed by him in mortgage, the widow, according to the case of *Wilkins* v. *French,* should have her dower assigned by the Probate Court; and if she had no other property, she might be deprived of her whole dower by a foreclosure of the mortgage, unless such assignment were held to be good as against him as well as against the owner of the equity of redemption. She might thus lose her whole dower without fault on her part, or on the part of the mortgagee; and if the assignment made by the Probate Court were to be regarded as an effectual bar to an action to recover her dower in the same land, the owner would be relieved from her claim to dower in land clearly subject to it, by presenting an assignment made by the Probate Court, as ineffectual to give her dower as against him, and yet as effectual to bar her action at law to recover it. Such an assignment cannot be considered as effectual for one purpose and as void for another purpose, so far as it relates to the same estate. Nor is there any sufficient reason to distinguish such a case from one like the present, in which the assignment has been avoided in part only, so far as it respects the land, in which the assignment has been avoided.

The strength of the position presented in defence may be tested by considering it, as it would be presented by a special plea setting forth an assignment of dower made to the demandant by the Probate Court and an acceptance of it by her,

to which a replication had been made setting forth the execution of the conveyance in mortgage, its assignment to the tenant, and its foreclosure, by which the assignment of dower had been avoided so far as it respects the premises, and that to this replication there had been a demurrer. Judgment could not be rendered for the tenant without deciding, that proceedings which had been avoided so far as it respects the premises, were still operative to bar an action to recover dower in them.

The conclusion is, when dower has been assigned against common right, and such assignment has been avoided in certain portions of the land by the acts of the owner, both parties are restored to their original rights in such portions.

A third ground of defence presented is, that the demandant was surety on the bond of the administrator on her husband's estate, who has misapplied a sufficient amount of that estate to have paid the mortgage held by the tenant, who would thereby have been exempted from any loss occasioned by a recovery of dower.

This assumes, that the premises after the recovery of dower will be insufficient to pay the whole of the debt secured by the mortgage, and that a suit upon the bond of the administrator could be maintained to recover for any loss occasioned by the recovery of dower. Neither this, nor some further grounds of defence presented, can be regarded as sufficient to prevent a recovery by the demandant.

*Tenant defaulted.*